IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CHRISTOPHER M. SANDERS,

                Plaintiff,                OPINION AND ORDER

  v.

                                  11-cv-206-slc

MS. LUNDMARK,

                Defendant.

---

This is a civil action for monetary relief brought under 42 U.S.C. § 1983.  Plaintiff Christopher M. Sanders was granted leave to proceed on his claim that defendant Sharalee Lundmark, an Institution Complaint Examiner at the Chippewa Valley Correctional Treatment Facility, retaliated against him for his grievances complaining about the inmate complaint system and Lundmark's treatment of him by threatening to file a conduct report against him and then by filing two false conduct violations against him.  Defendant Lundmark now moves for summary judgment, dkt. 31, on the ground that Sanders did not appeal the disciplinary decision on his conduct violations and as a result, failed to properly exhaust the administrative remedies that were available to him.

As explained below, I am staying a decision on the motion because a potential factual dispute exists concerning whether Sanders was deprived of a meaningful opportunity to pursue his administrative remedies by Captain Alan Chada, whom Sanders accuses of lying to him about the right to appeal the disciplinary decision.  Sanders will be given the opportunity to support his accusation with a sworn affidavit, which he has not yet done.

From the evidentiary materials submitted by the parties, I find the following facts for the purposes of this motion:

FACTS

Plaintiff Christopher Sanders was, at all times relevant to this lawsuit, an inmate at the Chippewa Valley Correctional Treatment Facility ("CVCTF") in Chippewa Falls, Wisconsin. Defendant Sharalee Lundmark is an Institution Complaint Examiner at the facility.

On December 11, 2010, Sanders sent an Information Request form to the Institution Complaint Examiner's (ICE) office, asking that certain inmate complaint forms be supplied to the floors.  Sanders wrote on the form that "All 3 inmate floors are empty, as of today."  On December 13, 2010, Lundmark responded that forms were available at the officers's station. Lundmark also wrote:  "You should not be on other floors taking inventory.  This could result in a Conduct Report."

On December 14, 2010, Sanders responded to Lundmark by submitting another information request to the ICE.  Sanders admitted having looked for forms on a different floor, but said he had been directed to do so by a "higher ranking officer."  Sanders said he didn't appreciate Lundmark's assumption that he was on other floors "taking inventory," a fact which he denied.  Sanders went on:  "I realize you are trying to scare me, or intimidate me, while I am seeking help.  Please stop hindering me from seeking help against abusive staff."

The next day, Lundmark issued Sanders a Conduct Report charging him with two minor offenses:  1) disrespect; and 2) lying to staff. On December 23, 2010, a disciplinary hearing on the conduct report was held pursuant to Wis. Admin. Code § 303.75, at which Sanders had an opportunity to testify.  The hearing officer, Captain Alan Chada, found Sanders guilty of both disrespect and lying to staff.  Chada entered a disposition of "reprimand only" and gave a copy

of the decision to Sanders.  Near the top of the decision form appears a section titled "TYPE OF HEARING," in which a box next to "MINOR (303.75)" was checked.

The number 303.75 corresponds to the section of the administrative code governing hearings and appeals of minor conduct violations.  Section DOC 303.75(6) specifies that "[a]n inmate may appeal the disposition of a minor hearing within 10 days to the warden." Sanders could have reviewed that administrative code section on line (through LexisNexis) at CVCTF's library.

Sanders did not appeal the disciplinary decision to the warden.  Instead, on January 14, 2011, he filed Offender Complaint CVTF-2011-1215, asserting that he had been deprived of equal protection and due process "while struggling with a retaliation from Ms. Lundmark of the I.C.E."  Sanders also stated that he had not been "afforded an opportunity to appeal" Captain Chada's disciplinary decision.  The ICE, through Lundmark, rejected Sanders' complaint on January 18, 2011, on the ground that Wis. Admin. Code § DOC 310.08(2)(a) prohibits complaints on conduct reports that have not been resolved through the disciplinary process in accordance with the Wis. Admin. Code § DOC 303.

On January 20, 2011, Sanders submitted a request for review of the rejected complaint. Among other things, Sanders stated that he was not complaining about a conduct report but rather about the absence of equal protection and due process by the institution.  Sanders also stated that he was "not given a fair hearing and not afforded an appeal."  On January 25, 2011, the reviewing authority decided that the ICE had appropriately rejected the complaint in accordance with § DOC 310.11(5).

3

On February 3, 2011, Sanders appealed the reviewing authority's rejection of his complaint to the Corrections Complaint Examiner. In his complaint, Sanders asserted that Captain Chada "didn't afford me an appeal." The next day, the CCE returned Sanders's complaint forms to him and advised him that under Wis. Admin. Code § DOC 310.13(3), the CCE was prohibited from reviewing a rejected complaint.

## OPINION

### I. Exhaustion under the PLRA

The 1996 Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The Court of Appeals for the Seventh Circuit has taken a strict approach to exhaustion, holding that district courts lack discretion to decide claims on the merits unless the exhaustion requirement has been satisfied. *Dixon v. Page*, 291 F.3d 485, 488 (7th Cir. 2002); *see also Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532, 535 (7th Cir. 1999). Further, "[s]ection 1997e(a) requires 'proper exhaustion'; that is, the inmate must file a timely grievance utilizing the procedures and rules of the state's prison grievance process." *Maddox v. Love*, --F.3d--, 2011 WL 3690049, *9 (7th Cir. Aug. 24, 2011). *See also Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002) ("To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require."). If the prison's administrative authority rejects a complaint because the prisoner failed to use the prison grievance system properly, the

prisoner runs the risk that his claim will be unexhausted indefinitely. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

In general, a prison official's application of a grievance procedure is unreviewable so long as the prisoner had "a meaningful opportunity" to present his grievance. *Simpson v. Greenwood*, 2007 WL 5445538, *4 (W.D. Wis. 2007) (quoting *Ngo*, 548 U.S. at 103). When such an opportunity is lacking, administrative remedies are said to be "unavailable" and exhaustion is not required. *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Thus, exhaustion has not been required where prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting, *Pozo*, 286 F.3d at 1024, such as by dismissing a properly-filed grievance because of a requirement on which "the administrative rulebook is silent." *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002).

Exhaustion is an affirmative defense that defendants have the burden of pleading and proving. *Dole*, 438 F.3d at 809. Factual issues regarding the defense of exhaustion of administrative remedies under the PLRA are questions for the court, not the jury, to decide. *Pavey v. Conley*, 544 F.3d 739, 741-742 (7th Cir. 2008).

## II. Wisconsin's Prison Grievance System

Wisconsin inmates have access to an administrative grievance system governed by the procedures set out in Wis. Admin. Code §§ DOC 310.01-310.18. Under these provisions, known as the Inmate Complaint Review System (ICRS), prisoners start the complaint process by filing an inmate complaint with the institution complaint examiner. An institution complaint examiner may investigate inmate complaints, reject them for failure to meet filing requirements

5

or recommend to the appropriate reviewing authority that they be granted or dismissed.  Wis. Admin. Code § DOC 310.07(2).  If a complaint is rejected, the inmate may appeal the rejection to the appropriate reviewing authority, who can review only the reason for the rejection but not the merits of the complaint.  Wis. Admin. Code § DOC 310.11(6).  However, if the institution complaint examiner makes a recommendation that the complaint be granted or dismissed on its merits, the appropriate reviewing authority has the authority to dismiss, affirm or return the complaint for further investigation.  Wis. Admin. Code § DOC 310.12.  If an inmate disagrees with the decision of the reviewing authority, he may appeal to a corrections complaint examiner, who is required to conduct additional investigation where appropriate and make a recommendation to the secretary of the Wisconsin Department of Corrections.  Wis. Admin. Code § DOC 310.13.  Within ten working days following receipt of the corrections complaint examiner's recommendation, the secretary must accept the recommendation in whole or with modifications, reject it and make a new decision or return it for further investigation.  Wis. Admin. Code § DOC 310.14.

A different exhaustion process exists for issues that fall outside the scope of the ICRS. Wis. Admin. Code § DOC 310.08(2)(a) states that the inmate complaint review system may *not* be used to address "any issue related to a conduct report, unless the inmate has exhausted the disciplinary process in accordance with ch. DOC 303."  Wis. Admin. Code § DOC 310.08(2)(a).[1]  Under this disciplinary process, the inmate is given a hearing at which he may make statements on his own behalf.  Wis. Admin. Code §§ DOC 303.75(4), 303.76(1)(e)1.  If he disagrees with the outcome of the hearing, he must appeal the disciplinary officer's decision

_____

[1]  The phrase "any issue related to a conduct report" is not further defined in the regulations.

6

to the warden within the allotted time period.  Wis. Admin. Code §§ DOC 303.75(6), 303.76(7).  Section DOC 303.75(6), which relates to the hearing procedure for minor violations, specifies that "[a]n inmate may appeal the disposition of a minor hearing within 10 days to the warden."  (A similar appeal process exists for major violations.)  After exhausting this appeal process, an inmate may use the ICRS to challenge procedural issues only.  Wis. Admin. Code § DOC 310.08(3).

## III.  Did Sanders Exhaust?

The state contends that Sanders's complaint must be dismissed for lack of exhaustion because Sanders did not follow the proper procedure for raising his complaints about Lundmark's alleged retaliation.  Because Sanders's complaint that Lundmark issued the conduct report in retaliation against him "related to a conduct report," argues the state, Sanders could not utilize the ICRS until he first exhausted the disciplinary process, which he failed to do. § DOC 310.08(2)(a).

As an initial matter, I note that I understand the state's argument in this regard to be focused on Sanders's claim that Lundmark retaliated against him by filing a conduct report, as opposed to his claim that she retaliated against him by *threatening* to file a conduct report. Although the state's position with respect to the threat claim is not entirely clear, it appears to be contending that Sanders did not pursue *any* (as opposed to the wrong) administrative remedy with respect to that claim.  *See* Br. in Supp. of Mot. for Summ. Judg., dkt. 32, at 9 (noting that Sanders "did not file any other complaints relating to any of the issues on which he was granted leave to proceed in this suit.").  In support, the state has submitted a complete copy of Sanders's

Inmate Complaint History Report, which shows that Sanders did not file a grievance complaining of any other alleged retaliatory acts by Lundmark. Sanders has not presented any contrary evidence or argument. Accordingly, I find that he did not exhaust his administrative remedies with respect to his claim that Lundmark threatened him after he complained about the shortage of complaint forms. The discussion that follows applies only to his claim that Lundmark retaliated against him by issuing a conduct report against him.

Sanders admits that he did not appeal the disciplinary officer's decision on his conduct report to the warden within 10 days of the decision. He argues, however, that prison officials were incorrect when they concluded that his prison complaint related to a conduct report. This argument does not make much sense in light of his own description of his grievance:

> [The state] says "clearly Sanders is talking about a conduct report" when I submitted my I.C.I. against Lundmark. I say that it is clear to a blind man that I am talking about being retaliated against (*with a conduct report*) and not being able to appeal *the conduct report*.

Br. in Opp., dkt. 40, at 6 (emphasis added).

Perhaps Sanders means to argue that he was not challenging the substance of the conduct report but rather Lundmark's motive for issuing it, but this argument does not help him. The rule under § DOC 310.08(2)(a) is that any complaint that is "related to" a conduct report must go through the disciplinary appeal process under § DOC 303 before the inmate can use the ICRS. Under even a narrow understanding of the term "related to," it is plain from Sanders's own description that his retaliation complaint against Lundmark was related to the conduct report. Indeed, if Sanders proved his case, he would likely have a complete defense to the minor conduct violation.

8

Sanders asserts that the reason he did not appeal the disciplinary decision and used the ICRS instead was because Captain Chada told him that he had no right to appeal a "reprimand only" disposition of a minor violation.  Br. in Opp., dkt. 40, at 4.  In reply, the state has submitted an affidavit from Captain Chada in which he denies telling Sanders he could not appeal the disciplinary determination.

It is unclear from the state's reply whether it agrees that, if made, Captain Chada's statement would be enough to show that Sanders was denied a meaningful opportunity to avail himself of the disciplinary appeal process.  *Compare* Reply Brief, dkt. 46, at 2 (arguing that it was plaintiff's responsibility to review administrative code and follow proper procedures), *with* id., at 3 (indicating that if court accepts plaintiff's allegation, then evidentiary hearing is necessary to resolve issue of fact as to whether Chada misled plaintiff as to availability of appeal process).  I am satisfied, however, that if Captain Chada told Sanders he could not appeal the decision, then filing a disciplinary appeal was not a remedy "available" to Sanders.  *See, e.g.  Nunez v. Duncan*, 591 F.3d 1217, 1224 (9th Cir. 2010) (exhaustion excused when prisoner was mistakenly told that he needed to read a Program Statement to pursue his grievance but the Program Statement cited was unavailable to him); *Brown v. Croak*, 312 F.3d 109, 113 (3d Cir. 2002) (formal grievance procedure not available where prison officials told prisoner to wait for termination of investigation before filing formal grievance and then never informed prisoner of termination of investigation).

I am not persuaded by the state's suggestion that any misadvice by Chada was irrelevant because Sanders could have discovered his right to appeal by reading the disciplinary disposition form.  The form did not advise Sanders that he could appeal the decision or even refer to the

9

right of appeal, but merely cited the administrative code section number in minuscule text next to the word "minor." It is not obvious that the number is even a citation to the administrative code, much less that one could discover his appellate rights by reviewing that section of the code.

Nonetheless, Sanders's allegation about what Chada told him is not properly supported by admissible evidence. Although Sanders submitted an affidavit in response to the motion to dismiss, nowhere in that affidavit does he attest to Chada's alleged statement. He *refers* to Chada's alleged statement in his description of certain documents attached to his affidavit, *see* Aff. of Christopher Sanders, dkt. 41, at 1 (noting that he wrote to Deputy Warden after Chada told him he could not appeal), but he does not swear under oath that Chada told him he could not appeal. He mentions the alleged statement in his brief, but statements in a brief are not evidence and cannot be given any weight. *See, e.g., Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003); *In the Matter of Morris Paint and Varnish Co.*, 773 F.2d 130, 134 (7th Cir. 1985).

Because Sanders is proceeding *pro se* and has expressed some confusion about how to submit evidence in opposition to the summary judgment motion, I will not dismiss his case at this point. Instead, I will allow him the opportunity to submit *admissible* evidence in support of his allegation about what Captain Chada said about his right to appeal the disciplinary decision. If Sanders meets his burden with a sworn statement, then the court will hold an evidentiary hearing to decide whose version of events is more credible, Sanders's or Captain Chada's.

As is this court's practice in these situations, I remind the parties of the consequences of making false statements in affidavits. Perjury is defined as giving "'false testimony [,while under oath,] concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory.'" *United States v. Bermea-Boone*, 563 F.3d

621, 627 (7th Cir. 2009) (quoting *United States v. Hickok*, 77 F.3d 992, 1007 (7th Cir. 1996) (citation omitted)).   Committing perjury in an affidavit exposes the affiant to sanctions, including dismissal of a plaintiff's claims. *E.g., Ridge Chrysler Jeep, LLC v. DaimlerChrysler Financial Services Americas LLC*, 516 F.3d 623, 626-27 (7th Cir. 2008) (plaintiff's claims dismissed as sanction for perjury and other litigation misconduct).   If Sanders repeats his accusation about Captain Chada in a sworn affidavit, then he should also explain why he did not mention this fact at any time during the ICRS complaint process or in his § 1983 complaint.   Sanders also should clarify whether he did not appeal the disciplinary decision because Captain Chada told him he could not, or because he could not find a procedural manual that explained how to do so, as he asserts in his submissions.


ORDER

IT IS ORDERED that defendant's motion for summary judgment, dkt. 31, is STAYED until October 19, 2011, in order to allow plaintiff to supplement the record if he chooses.


Entered this 5th day of October, 2011.

BY THE COURT:

/s/

STEPHEN CROCKER
Magistrate Judge